Case number 18-7040, D&S Consulting, Inc. v. DSCI, a New Jersey Corporation appellate v. Kingdom of Saudi Arabia, His Excellency Abdel Ben Ahmed Al-Jubeir, Minister of Foreign Affairs. Mr. Sternberg, for the appellate, Commissioner Pan, for the appellate. Thank you, Madam Clerk. Good morning. Good morning, Your Honor. Richard Sternberg on behalf of D&S Consulting, which I'll refer to as DSCI often. We begin by addressing the court's precurion reference to Asaba case, because it is surely determinative in this case. The case starts with a substantial presumption in favor of the plaintiff's forum selection, citing MBI, which was decided by two members of this court. Step one in that analysis is for the court below to have determined whether this is mandatory or permissive. But that matter is a matter for de novo review by this court in Asaba section 382. The court accepts plaintiff's complaint in the light most favorable to the plaintiff, also referred to in Asaba, citing she. The court defines mandatory as requires that litigation proceed in a specific forum. Permissive is it allows but does not bar. While looking at some of the examples in the Asaba case itself, the language was the parties submit to the exclusive jurisdiction of the courts of England and Wales. In the M.S. Bremen case, it's any dispute must be treated in merit. And here is shall be assigned. I'm sorry, what shall be assigned? No grievance counts and that shall be assigned. It's not that the case shall be assigned. That's the point that the grievance counsel shall be assigned. The shall is not operative for the where the hearing will occur. It's no different in language. What does it mean to do to assign the whatever you said to the grievance counsel? Well, similar to the country. What is assigned to the grievance counsel? That a grievance counsel shall be assigned. It's not the case is not assigned to the grievance counsel. No, but it's a grievance shall be assigned. It shall be assigned to any case. Pardon me, Your Honor. It says to any case arising under this case. The grievance counsel shall be assigned. The grievance counsel is the operative noun there. So if it says a panel of the D.C. Circuit shall be assigned. That would not be I would think that is not the same language. If the case what the language in ASMA says is that permitted is allows but does not bar. So I'm looking for language that bars. But you have to read the rest of the sentence. It says that shall be assigned for settlement of any disputes arising under the execution of this contract. I think that's substantially different than the language shall be settled by the Greek courts. I think that's substantially linguistically different. And, indeed, I write language like that when I write employment contracts. And all I'm doing is creating a grievance process. Your whole case depends on this argument, right? No, it does not, Your Honor. It doesn't? Because the district court and the defendant here say that, you know, that if it is if we think it's mandatory, you don't make any public interest argument at all. Is that true? No, Your Honor. No, Your Honor. The analysis. Where do you make a public interest argument? Oh, I'm sorry. I'm only half hearing you, Your Honor. Oh, I'm sorry. The defendant says that that and the district court said that you made no argument that if this is mandatory, that it's outweighed by the public interest. What we focus on instead, Your Honor, is step two of the analysis in asthma. And that is that even if it is permissive, the standard becomes the standard goes to the fourth step in the asthma analysis, even if permissive. But what I'm asking is suppose it's not permissive. Suppose we think it's mandatory. I'm sorry. Even if it's mandatory. Then what? If it is a mandatory clause, I simply set it backwards. In a mandatory clause, we go through a fourth-factor analysis as to whether we're required to go to that forum. And the fourth factor is so gravely difficult and inconvenient that plaintiff will, for all practical purposes, be deprived his day in court. And that language is what we need a factual finding on. We have argued in the court below, and as we argue in our briefs here, that we can't meet that standard, that there's no transparency, there's no legal framework for resolving commercial disputes, there's no starting to ceases, it applies Sharia law, it's lengthy and unpredictable. All of those things are provided with substantial citations. Furthermore, unlike the care and caution taken by the trial court in the MBI case, the trial court refused to address the fact that DSCI has no standing in Saudi Arabia. They cannot appear. They cannot sue before the grievance council because it's a U.S. entity. They have no standing? Correct. They can't be. One, we cite in the materials that as a U.S. corporation, they cannot sue there. Furthermore, they can't enter the country. Furthermore, the kingdom's law discriminates against non-citizens, which is both the corporation and its council. But performance was done in the country, right? Excuse me? Performance was done in the country. That's correct. Performance was done in Saudi Arabia. Our claim is, therefore, under the foreign sovereign immunities act. I think that's a jurisdictional issue, Your Honor. The performance is outside. I'm misunderstanding you. If it's mandatory, then all of those private considerations fall out, and the only questions are the public factors, correct?  That is not what Asimov says, Your Honor. What Asimov says is if it is mandatory, there is then a four-factor analysis. This is in Asimov at page 7, citing M.S. Bremen, which, of course, Your Honor is familiar with. And the language specifically is even if it's mandatory, even if it's mandatory, so gravely difficult and inconvenient, the plaintiff will, for all practical purposes, be deprived to stay in court. And, in fact, we are deprived that day in court. Anybody but non-practicing Muslims are also barred in these hearings. Other religions, like Jewish lawyers from Maryland, are barred from these proceedings. Further, we filed supplements in the court below that we thought were not on factual issues here, so we didn't include them in the record. But the administrations changed in the kingdom since the contract was signed by DSCI. The kingdoms imprisoned and tortured businessmen who were making claims for payment, just like DNS Consulting is making here. The claimants were held in the Ritz-Carlton Riyadh and reported some substantial injuries, including death. The ‑‑ Creditors were held there? Yes. That is my understanding of the articles I've read. And we provide citations to that in the record below. But we've had no factual hearing on that point. We'd also like to know about another person who complained about the transparency of the process in the kingdom and disappeared in the Turkish embassy and was chopped up into little pieces and dissolved like a nasty scene out of Breaking Bad. And this Court would send us there to try this case. The court below would send us there to try this case. Your first argument is that it's mandatory rather than permissive. My first argument is that it's permissive, not mandatory. I'm sorry. It's permissive, not mandatory. But on that issue, suppose that the Foreign Selection Clause said, the agreements counsel shall be assigned for settlement of any and all disputes instead of just any disputes. Would you, at that point, would you say that it's mandatory? Well, I think that case would be an interesting case to discuss what is excluded. But the language in the Asimov case is that it must be ‑‑ No, but I'm talking about the language in this case. So it says, the agreements counsel shall be assigned for settlement of any disputes. That's what the Selection Clause says, right? Any agreements counsel shall be assigned. Okay. I thought it said the. But that's, the district court says, the agreements counsel shall be assigned for settlement of any disputes or claims. And my question is, what if it says, the agreements counsel shall be assigned for settlement of any and all disputes or claims? I would certainly, well, I make a decision on what that means. I think what Asimov means is I need to see two elements for it to be permissive. I need to see an assignment, and I need to see an exclusion. So even if it said any and all, as in every dispute. I might lose that case, but that's not this case. Okay, but then everything turns on whether it includes or all. And so what's the difference between any disputes and any or all disputes? Because it seems like if it says any disputes, it means every dispute. I think what I need in the Asimov case is a statement first of what's included, of where to go. And I don't think that clause at all, but I hear the court not hearing that. First I need to hear an assignment of not a process, but of a forum. And then I need the exclusion of the others. Like the language, exclusive or must be treated or shall be settled. So I don't really think that the, even if you add and all, I think what you have to have in there is exclusively by. And not in the United States, and something else. I'm looking for, in the language of Asimov, the two elements. But importantly, since I may not be winning that point, even if I am in a mandatory clause, the Asimov court refers to the fact that the trial court should be making a factual finding as to whether element four is met. And there is no such finding. We asked for such a hearing. We provided more than a good faith basis in the briefings. We provided State Department's findings of that nature, as well as other references from the CIA fact book. And we did not get that hearing. The question becomes whether it's available and adequate, which is presumed if it's a mandatory, or whether it's accessible and able to afford relief, which is the language of what happens if it's a mandatory clause. And then in Asimov at page eight, if the preselected form is substantially deficient, for instance, because it is effectively inaccessible or unable to afford the plaintiff any relief, then the clause is not enforceable. That's absolutely a mandatory setting. If that sentence is to have meaning from this Court, it must have meaning in this case. Mr. Sternberg, you're out of time. I'm showing one minute 20, 30. You're out of your time. Oh. Thank you. Good morning. Good morning. My name is Alexandra Chopin, and on behalf of the Kingdom of Saudi Arabia, may it please the Court, Rakhia actually ratifies the decision of the District Court to dismiss her forum nonconvenience for three key reasons. First, the forum selection clause here is mandatory because it states that any claim shall be assigned to the Saudi Board of Grievances. Shall means shall. Second, the District Court did not need to ask whether the Saudi Board of Grievances was an adequate, available, or best-for-the-party's-private-interest type of forum, because the parties had already agreed that the Saudi Board of Grievances is available and adequate. And third, even if the forum selection clause is permissive, Saudi is still the best forum, because the Kingdom has waived its sovereign immunity as to any claim on this contract in the Board of Grievances, and the entire contract was performed in Saudi, which is also where all of the witnesses and records are located. Generally, as I hear the Court's questions, they focus in on the language of the forum selection clause, and appropriately so. And we would emphasize that this clause contains not only language of mandate, which is really the Court's instruction, regardless of the specific language itself. What the Court is looking for, both in Mara and in Rakhia, is language of mandate. And here we have that, shall. But we also have breadth, and that is what Bremen speaks to, that we look to the all-encompassing nature of this forum selection clause, which again tells us that it is mandatory. The Court is correct when it asks, you didn't make any public interest argument, did you counsel for DSCI? The answer is no. In fact, as the District Court recognized, there is no argument whatsoever as to the public interest factors. But on top of that, and critically, there is no evidence in the record whatsoever to substantiate any of the allegations, and they really are generalized allegations based on media reports. What could a party show under the public interest analysis to overcome a mandatory clause? A party, sir, or DSCI? No, I mean, what could a defendant show? What could the party show, in any case, where there's a mandatory clause? Let's assume it's mandatory. Sure. What would a public interest finding be that would overcome that? Well, the Court has given us some examples. So, for example, in the Menendez case, where we saw a bar by the United States on accessing Cuba. Or, for example, if there were some other foreclosure in the Kingdom of Saudi Arabia barring entry to DSCI. But, again, there's no evidence in the record to substantiate that. What about his argument that it has no standard? That's simply incorrect. In fact, the mandatory informed selection clause here makes it clear that the party's intent at the time of contracting was that any claim whatsoever on this contract would be brought in. And so there is an effective way to get to any claim on this contract. But I think his argument, your colleagues' argument, aside, is not necessarily that it's incorrect or correct. It's that they haven't had a determination of whether it's correct or incorrect. As to the adequacy of the forum? Yeah. The district court did not need to make a determination as to the adequacy of the forum. Because when the clause is found to be mandatory, as it was in this instance, the party's bargain is in all but the most unusual cases respected by the court. But there is this language in Azima that invokes this fourth factor. Even in a mandatory case, the trial in the contractual forum would be so gravely difficult and inconvenient that the plaintiff will, for all practical purposes, be denied his day in court. And if the court will forgive me, I've come to refer to the case as rakia. Perhaps that's the focus on the sovereign in me. In fact, that analysis comes as part of the validity and enforceability part of the analysis. So in this court, rakia makes clear that the initial analysis by the circuit court is a de novo one on the applicability, the enforceability, the validity, and the mandatory nature of the contract. And within that analysis, there's a binary question that gets asked, yes or no. Is the forum so gravely inconvenient that you are effectively denied any remedy whatsoever? There is no dispute in this case whatsoever as to enforceability or validity. In fact, it's only about the mandatory nature. That analysis is not the same as the adequacy of the forum. In fact, that's quite a low bar on adequacy. And in fact, there are many courts that have already held around the country that the Saudi Board of Grievances is an adequate one. But the adequacy, you said, is different from this fourth factor. It is. It is. And so first, there's no dispute in this case as to validity and enforceability. Within the context of that question, if there were one in this case about a validity and enforceability, then it would be appropriate for the court to ask, is the forum so gravely inconvenient that there is no remedy for DSDI? DSDI has made no argument to that effect in the district court or here on appeal. They are conflating adequacy of the forum with that validity and enforceability inquiry. And what you're saying is the threshold validity and enforceability question is spoken for? It's satisfied. It's certainly satisfied. And was never disputed? It was never disputed. But on top of that, to the extent that the court is making a de novo review, the contract is the best evidence for the adequacy of the forum. I'm sorry, for the validity and reach, the ability to reach that forum. Beyond that, there are numerous decisions of the district courts around this country, ones that have been affirmed in addition by both the Fifth and Seventh Circuits, that the Saudi Court of Grievances is accessible. If the district court were to dismiss this case with an order, holding the dismissal in abeyance for a period of six months or three months or something, within which the plaintiff can file or seek a remedy before the grievance counsel, would the kingdom object to that? I would submit that there's no reason to do so, Your Honor, because there's already a submission to that tribunal by the kingdom. On top of that, it really flies in the face of what If we think that the forum is adequate and dismiss the case, and then it turns out for reasons, or any one of the reasons that the plaintiff here has deduced from the public media that it's unable to pursue a remedy, the adequacy question will be raised here to God. Well, in that event, we would invite the plaintiff appellant to move to reopen the judgment. But to do otherwise would really Reopen which judgment? I'm sorry. Reopen which judgment? The decision of the district court below. The FSAA is designed to save the kingdom of Saudi Arabia that very kind of burden, where it must hold this case open while it sees while the plaintiff appellant begins to do the job it should have done in the district court. Instead, the FSAA, the decisions implementing it here, including Owens, says that really the FSAA is meant to save not only decisions of the U.S. courts, but litigation in the U.S. courts, and that as the moving party on the forum nonconvenience motion to dismiss, the kingdom of Saudi Arabia was entitled to pursue the, quote, most cheaply decisive. That's this court's words in in Ray Papandreou. We were not subjected. I'm sorry. We were not expected to keep the decision open while the FBI sees if it can find some evidence to show that it's not able to access the forum, which clearly it is able to do. Yes. Okay.  Thank you. What circuit has upheld the claim that the defense, that the grievance counsel was adequate? There are a number of cases cited in our brief. Any circuit cases? Yes. On page 24 of our brief, we discuss UNC Lear, in which the Fifth Circuit affirmed a finding under forum nonconvenience that the Board of Grievances is an adequate forum. In addition, the Seventh Circuit in KAMEL, which is K-A-M-E-L, Act 108, F-3rd, 799, affirmed a dismissal under forum nonconvenience for the same reason. Thank you. Thank you. Thank you. Mr. Sternberg, you were out of time, but you could take one minute if you would like it. Thank you, Your Honor. Your Honor, the, as my learned opponent has conceded, the district court did not decide the issue, the factual issue of whether the forum was available and adequate or, I'm sorry, the better term is accessible and able to afford relief. Well, isn't that because the district court thought it was mandatory? Yes. If you assume that it is mandatory, if this court concludes that, I may disagree with that, but that's for this court to decide de novo. If the court decides that, there is still the second standard. There is still stage four. There is still the language I've quoted a couple of times, that even if it is a mandatory provision, the court needs to make a finding as to whether the, not as to whether it's a, I'm sorry, a slightly different language between the two, but difficult, so gravely difficult and inconvenient that, and it's available and adequate. In any event, just to summarize, not to run out of time. You just did, but go ahead. Thank you, Your Honor. The court should apply the factors and conclude the language is permissive, but regardless of that, remand for further fact finding. Fact is neither DSCI, Ms. Chopin, Mr. Berger, myself, or the members of this court would have standing, and you will, in fact, be deciding the merits of this case, and that's not your job. Okay. Thank you both. The case is submitted. Thank you, Your Honor. Next case, please.
judges: Tatel, Srinivasan, Ginsburg